(111 So. 169)

No. 26179.

GIBSLAND OIL MILLS & FERTILIZER CO., Limited, v. LOUISIANA & N. W. R. CO.

(Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. Carriers ⚖135—Evidence held not to show negligence in bracing machine in car, but that damage thereto was caused by negligent handling of shipment by railroad.

In action for injury to machinery shipped over railroad, evidence *held* not to show negligence of plaintiff in manner of fastening or bracing machine in car, but that damage thereto was caused by negligent handling of shipment by railroad.

2. Carriers ⚖135—Shipper's damages for machine broken in transit was difference between price and best sale price at destination after damage thereto.

In action for damage to machine broken by rough handling in transit, loss to shipper was difference between price at which machine was sold to consignee and best price shipper could sell it for on arrival at destination in its damaged condition.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Action by the Gibsland Oil Mills & Fertilizer Company against the Louisiana & Northwest Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Richardson & Atkins and Wm. F. Meadors, all of Homer, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee.

O'NIELL, C. J. This is an action for damage done to a piece of machinery shipped by the plaintiff over the defendant's railroad, and alleged to have been broken by rough handling of the car. The railroad company defended on the ground that the damage was the result of improper bracing of the machine in the car, which the plaintiff loaded for shipment. The district court gave

162 LA.—26

judgment for the plaintiff for $3,000, the amount sued for. The defendant, railroad company, has appealed.

[1] The shipment was a carload shipment, consisting mainly of a planing machine, or matcher, weighing approximately 8 tons, which was loaded in a box car by the plaintiff's employees, and shipped from Gibsland, La., to St. Louis, Mo. When the car arrived in St. Louis, it was discovered that the machine had broken its bracings and had slid forward in the car, and that the front end of the cast-iron base of the machine was broken. It is conceded by the railroad company that the damage was done in transit and that the company is liable, if it has not been proven that the machine was improperly braced or insecurely fastened to the floor of the car. The base of the machine was about 14 feet long. In order to roll it into the car, two 4″x6″ timbers, about 16 feet long, were placed under the base, lengthwise, and bolted to it. The machine, thus bolted to the 4″x6″ timbers, was placed centrally in the car, so as to equalize the strain on the floor and trucks of the car. Four cleats, consisting of 2″x6″ timbers, extending the full length and width of the base of the machine, were then placed around the base and nailed down with 20-penny nails, 10 nails being driven in each cleat. The front of the base was braced against the front end of the car with a 4″x4″ scantling nailed to the floor of the car and extending lengthwise from the end of the base of the machine to the front end of the car. The testimony leaves some doubt whether one end of this 4″x4″ brace was placed against the cast-iron base of the machine or against the edge of the 2″x6″ cleat that was nailed to the floor. In the forward movement of the machine the 2″x6″ cleat was torn loose from the floor, and the end of the 4″x4″ brace broke through the front end of the cast-iron base. The expert witnesses for the railroad company say that

it was a mistake to put the 4″x4″ brace where it was; that there should have been either no such brace at all at the end of the machine, or else two such braces, one at the end of each one of the 4″x6″ timbers that were bolted to the base of the machine. Our opinion is that the expert witnesses for the railroad company—perhaps without realizing it—relied too much upon the doctrine res ipsa loquitur. The expert witnesses for the plaintiff testified that, if there had been no such brace as the 4″x4″ scantling at the end of the machine, it would have broken through the end of the car. Several expert witnesses testified—and there seems to be no doubt about the fact—that the car must have received unusually rough handling, or had a violent and extraordinary jolt, to move the machine at all from the position in which it was placed and fastened on the floor of the car. The method of fastening and bracing the machine was the same that was used when it was shipped to the plaintiff from the factory, and it arrived uninjured. We concur in the opinion of the district judge that the preponderance of the evidence is with the plaintiff, that there was no negligence or imprudence in the manner of fastening or bracing the machine in the car, and that the damage must have been caused by negligent handling of the shipment by the railroad company.

[2] Appellant complains of the amount of the judgment and contends that the extent of the damage proved was only $2,550. The machine was manufactured at Beloit, Wis. It was sold by the plaintiff, secondhand, to the consignee at St. Louis for $4,000. The damage being estimated and adjusted at $3,-000, the plaintiff sold the broken machine to the consignee for $1,000. A representative of the manufacturer examined the broken machine in the car at St. Louis and made an estimate of the damage. He testified that the machine would have to be shipped to the factory at Beloit, Wis., for the casting of a new base; that the casting would cost at least $2,000; that the labor of placing the machine on the new base, etc. would be approximately $400; and that the freight would amount to $150. The reason why the whole base was destroyed is that it was what the machinery men call a cast in one piece base. To the estimated cost of $2,550 should be added the cost of twice loading and unloading the machine for shipment to and from the factory; besides which it appears that the interior shafting and other parts of the machine were sprung and damaged to a considerable extent. The plaintiff's loss therefore was the difference between the price at which the machine was sold secondhand to the consignee in St. Louis and the best price that the plaintiff could sell it for when it arrived in St. Louis in its damaged condition; which difference was $3,000.

The judgment is affirmed.